BONNIN, Respondent, vs. ZUEHLKE, Appellant.

*April 21—May 10, 1904.*

*Replevin: Property taken for taxes: Payment after action begun: Validity of levy: Sufficiency of demand: Possession of warrant.*

1. Under sec. 3732, Stats. 1898, replevin cannot be maintained for property taken by virtue of a warrant for the collection of a tax in pursuance of statute.
2. Payment of the tax after the commencement of the action of replevin in such a case does not authorize the maintenance of the action; nor does it deprive the court of jurisdiction.
3. The demand for payment of a tax, before the making of a levy thereof by distress and sale of goods, need not be formal. It is enough if the taxpayer, knowing that the treasurer has the warrant for collection, is informed by such treasurer that payment is desired.
4. A levy upon goods for the collection of a tax is not invalidated by the fact that the treasurer did not at the time have the tax roll and warrant upon his person, where both were near by, in his possession and control.

APPEAL from a judgment of the circuit court for Shawano county: JOHN GOODLAND, Circuit Judge. *Reversed.*

It appears from the record that March 13, 1903, the plaintiff made before and filed with a justice of the peace an affidavit wherein he testified that he was the owner and lawfully entitled to the possession of the team of horses, wagon, and harnesses therein described of the value of $175, and that the same had been unjustly taken and were unlawfully detained by the defendant, and that the same had not been taken for any tax levied by virtue of any law of this state, nor seized under any execution or attachment against the goods and chattels of the plaintiff liable to execution. Thereupon, and on the same day, the justice issued a writ of replevin, and the same was served on that day on the defendant, and the property seized.

Upon the return day of the writ the defendant appeared by attorneys and answered such affidavit, which was the com-

plaint in the action, to the effect that he had been duly elected as town treasurer and qualified as such; that December 1, 1902, the tax roll of the town, with the warrant for the collection of the same, were delivered to him as such treasurer for collection; that he retained such possession until March 15, 1903, when he delivered the same to the county treasurer; that on said tax roll was a charge and tax levied against the plaintiff of $85.13; that March 6, 1903, the defendant, as such treasurer, with the tax roll and warrant in his possession, demanded the payment of such tax from the plaintiff, and offered to give him a tax receipt upon the payment of such taxes; that the plaintiff refused to pay said taxes, or any part thereof; that March 10, 1903, the defendant, as such treasurer, and by virtue of said tax warrant and tax roll in his possession, levied upon the property described for the purpose of collecting such taxes by virtue of the sale of the property so levied upon, and immediately after such levy posted up notices of the sale of said property, as required by law; that the acts of the defendant above mentioned are the same acts complained of in this action.

Upon the trial of the cause before the justice the plaintiff recovered, and thereupon the defendant appealed to the circuit court. When the cause was reached for trial in that court, a jury was waived, and the cause was thereupon tried by the court, and at the close of the trial the court found as matters of fact, in effect, that the allegations in the plaintiff's complaint were proven and true; that the allegations in the defendant's answer were not proven and true; that the defendant unjustly took and unlawfully detained from the plaintiff the property described in the complaint; that the value of said property was $175; that the plaintiff has sustained damage in the sum of $15 by reason of the unlawful taking and detention of said property. And as conclusions of law the court found, in effect, that the plaintiff is entitled to the possession of all the property described in the com-

plaint, and that he recover the sum of $15 damages for the unlawful detention and seizure of said property by the defendant, with the costs of this action, and ordered judgment to be entered accordingly. From the judgment so entered the defendant brings this appeal.

For the appellant there was a brief by *Wallrich, Dillett & Larson,* and oral argument by *H. S. Larson.*

For the respondent there was a brief by *Dreier & Winter,* and oral argument by *P. J. Winter.*

CASSODAY, C. J. 1. The statute expressly provides that such action of replevin "shall not be maintained for any property taken by virtue of any warrant for the collection of any tax in pursuance of any statute of this state." Sec. 3732, Stats. 1898. Such statute has frequently been enforced. *Power v. Kindschi,* 58 Wis. 539, 17 N. W. 689; *Keystone L. Co. v. Pederson,* 93 Wis. 466, 469, 67 N. W. 696; *Harris v. Snyder,* 113 Wis. 457, 89 N. W. 660. The affidavit for the writ of replevin, which constitutes the complaint in this action, expressly states that the property therein described had not been taken by the defendant for any tax levied by virtue of any law of this state. It is undisputed that the defendant, as treasurer of the town, received the tax roll and tax warrant in December, 1902; that the plaintiff was liable thereon for taxes on real estate which he paid, and for $85.13 taxes on personal property; and that the defendant still had possession of such tax roll and tax warrant at the time the action of replevin was commenced; and that the plaintiff had not at that time paid such taxes, except on the real estate. The statute declares that:

"In case any person shall refuse or neglect to pay the tax imposed upon him, the treasurer shall levy the same by distress and sale of any goods and chattels belonging to such person, wherever the same may be found within his town, city or village." Sec. 1097, Stats. 1898.

Another section of the statute made it the duty of the defendant, for the purpose of collecting such taxes, to "call at least once on the person taxed . . . and demand payment of the taxes charged to him on such roll." Sec. 1089, Stats. 1898, as amended by sec. 4, ch. 335, Laws of 1899. The answer alleges that on or about March 6, 1903, the defendant, with the tax roll and warrant in his possession, did make due demand upon the plaintiff for the payment of said taxes, and offered to give him a tax receipt upon such payment being made, but that the plaintiff refused to pay such taxes, or any part thereof. Whether he did make such demand or not was one of the principal issues to be tried. It was not determined by the findings of the trial court; certainly not by the finding that the allegations in the complaint were proven and true, since the complaint was silent on that subject. Nor is the finding that the allegations in the answer were not proven and true of any significance, since it appears from the undisputed evidence that most of such allegations are true. For obvious reasons this court refrains from setting aside specific findings of fact not against the clear preponderance of the evidence. But in the case at bar there is no specific finding as to whether such demand of payment was made. The defendant testified to the effect that on or about March 6, 1903, and while the tax roll and warrant were in his possession, he made demand upon the plaintiff for the payment of the taxes so assessed against him; that he asked him if it was not pretty near time to settle up the tax business— to get around to collect the taxes; that the plaintiff then asked how much it was ; that he told him that he had the receipt already made out, and that he could look it over; that the plaintiff then took the receipt, and looked it over, and said the assessment was too high, and he did not want to pay it, and asked him to see the town board and get them to let off some; that he was willing to pay the tax, but not the whole amount stated; that he again called upon the plaintiff March

10, 1903, and demanded the payment of the personal tax against him, then due and unpaid; that he told the plaintiff to pay it under protest, and save trouble; that the plaintiff then asked him if he had seen the board about it, and he told him that he had, but that they would do nothing about it; that the plaintiff then said he would not pay it; that he told him he ought to pay it under protest, and save trouble; that the plaintiff replied that he would not do such a thing; that he then told the plaintiff that he would have to do his duty and levy on his property, and hoped there would be no hard feelings between them; and about an hour after he made the levy. The plaintiff testified to the effect that the defendant did not make any demand for him to pay the tax or that he would seize his property; but he admits that the defendant called on him twice in regard to those taxes; that the first time, after they had talked about the taxes a bit, the defendant handed out a receipt and said that it was about time to look around about taxes; that it had the appearance of a tax receipt, and that was what he took it for; that he understood the defendant was ready to receipt for his taxes if he had voluntarily paid them, either there or at any other place; that the tax was high, and they talked about it; that the defendant said he knew it was high; that he told the defendant that he knew the taxes were too high, and that he had a good deal of influence, and ought to see the town board, and have the matter fixed up, and save the town trouble and costs; that on March 10, 1903, the defendant came to him again, and then said:

" 'I saw those fellows, and they did not want to do anything about it. It is getting late, and I will have to do something about taxes.' I did not know that he was going to levy, and did not know but what he might. I paid no further attention to it. I told him I was willing to pay a good big share of my tax, but did not feel like paying excessive tax."

The plaintiff knew that the defendant had the tax roll and tax warrant. He had paid to the defendant his real estate tax.

He had twice declined to pay the tax on his personal prop-erty, because he regarded it too high. He was expressly in-formed that the defendant would have to do something about taxes unless they were paid. It is very obvious that the de-fendant demanded the payment of the tax before making the levy. The use of the word "demand" was not essential. Thus it has been held:

"The demand by a collector for the payment of a tax need not be in absolute words. It will be sufficient if the collector intimates that the payment is desired; anything that informs the taxpayer that the collector has a warrant, and desires pay-ment; and anything that plainly brings home to the taxpayer that the collector is there officially." *Miller v. Davis,* 88 Me. 454, 34 Atl. 265.

2. It is claimed that the defendant's levy on the property was invalid because the defendant did not have with him on his person at the time the tax roll and warrant. It is undis-puted that at the time of the levy the tax roll and warrant were in the defendant's office, and that in making the levy he seized the team, wagon, and harnesses in the street immedi-ately in front of his office. It also appears from a preponder-ance of the evidence that he informed the person in possession thereof that he so levied upon the property and took the same into his possession for the taxes. He was not called upon to exhibit his tax roll and tax warrant. They were both in his possession and control, and near by, but not on his person. Such tax roll and warrant are liable to be quite bulky and in-convenient to carry on one's person. We must hold that the mere fact that the defendant did not have them in his hands when he seized the property did not vitiate the levy. The property was taken by virtue of the warrant for the collection of the tax; and, as we have already seen, that of itself pre-cluded the plaintiff from maintaining replevin for the prop-erty. Sec. 3732, Stats. 1898. In addition to cases cited above, see *Adams v. Davis,* 109 Ind. 10, 9 N. E. 162; *Maple v. Vestal,* 114 Ind. 325, 16 N. E. 620. The reason is obvious.

The statute has prescribed a different remedy for the person who deems himself aggrieved by such levy. This is sufficiently pointed out by Mr. Justice MARSHALL in *Keystone L. Co. v. Pederson,* 93 Wis. 466, 469, 67 N. W. 696. In that case it was held that:

"One who wishes to test the validity of a tax against him, for the collection of which his property has been seized by the treasurer under a warrant, should pay the tax under protest, and so recover his property, and then bring his action" to recover back the amount paid, under sec. 1164, Stats. 1898.

3. The mere fact that the plaintiff paid the amount of taxes in question the next day after this action was commenced, and four days after the levy, did not authorize the plaintiff to maintain this action of replevin. *Thomas v. Wiesmann,* 44 Wis. 339. Nor did such payment deprive the court of jurisdiction. *Dr. Shoop Family Medicine Co. v. Schowalter,* 120 Wis. 663, 98 N. W. 940.

There are no other questions calling for consideration.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with direction to dismiss the action.